# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HOLLIS L. SIMPSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of the Social Security )<br>Administration, )<br>)<br>Defendant. ) | Case No. CIV-07-275-SPS |

## OPINION AND ORDER

The claimant Hollis L. Simpson requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id.* § 423(d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether correct legal standards were applied.  *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997), *citing Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991).  The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  The Court may not reweigh the evidence or substitute its discretion for that of the agency.  *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of [the] evidence must take into account whatever in the record fairly

---

[1] Step one requires the claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires the claimant to establish he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  *Id*. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work.  The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account his age, education, work experience and RFC.  Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on October 2, 1965, and was forty (40) years old at the time of the administrative hearing. He has a high school education and previously worked as a truck driver. He alleges he has been unable to work since February 13, 2001, because of heart and lung problems, chest pain and shortness of breath.

**Procedural History**

On May 5, 2004, the claimant filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Both applications were denied. ALJ Lantz McClain conducted a hearing and found that the claimant was not disabled on October 3, 2006. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant's "coronary artery disease (CAD) with status post stent placement, hypertension, chronic obstructive pulmonary disease (COPD), and moderate obesity" were severe impairments (Tr. 16), but that he retained the residual functional capacity ("RFC") to perform sedentary work, *i. e.*, lifting and/or carrying up to ten pounds; standing and/or

walking for two hours in an eight-hour workday; and sitting for six hours in an eight-hour workday (Tr. 21). The claimant was further limited from concentrated exposure to fumes and temperature extremes (Tr. 21, 23). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform existing in significant numbers in the regional and national economies, *e. g.*, hand worker, escort driver, and clerical assembler (Tr. 22, 23).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the medical opinions of his treating physician, Richard J. Helton, D.O.; (ii) by finding that he had the RFC to perform substantial gainful activity; and (iii) by failing to properly evaluate his credibility. None of these contentions have merit.

The claimant first argues that the ALJ failed to properly consider the medical opinions expressed by Dr. Helton on the medical source statement. Dr. Helton began seeing the claimant in February 2001. At that time, the claimant underwent a head CT, a lung perfusion scan, and a chest X ray, all of which were normal (Tr. 309-11). In March 2001, the claimant complained of problems with emphysema and suggested to Dr. Helton that he needed time off from work (Tr. 307). By April 2001, the claimant had been off work since March but was still experiencing shortness of breath. Dr. Helton diagnosed the claimant with COPD and prescribed him medication (Tr. 306). The claimant's visit with Dr. Helton in May 2002 was primarily for a refill of his medications (Tr. 305). In progress notes from June 2004, Dr. Helton noted the claimant had recently been released from prison. The claimant reported

left-sided chest pain and occasional coughing, double vision, dizziness and headache. Dr. Helton found that the claimant's lungs were clear, his heart was regular, and he suffered no edema. He diagnosed the claimant with COPD (Tr. 304). When the claimant returned to see Dr. Helton in November 2004, he continued to suffer the same problems with the addition of shortness of breath, numbness and tingling in the arms and constipation. Dr. Helton found the claimant's lungs were clear and his heart was regular. He prescribed the claimant nitroglycerin patches to relieve his chest pain (Tr. 302). By February 2005, the claimant complained of a cough, shortness of breath during exertion, double vision and weight gain (Tr. 301). His thyroid tested normal (Tr. 308). In September 2005, Dr. Helton determined the claimant's cholesterol was elevated and that he suffered from hypertension and coronary artery disease. He noted that the claimant had a stint in place (Tr. 420). The claimant returned in December 2005 for lab work and to ask Dr. Helton to complete a physical medical source statement (Tr. 419). On the medical source statement, Dr. Helton opined that the claimant could lift and/or carry less than ten pounds; stand and/or walk continuously for ten minutes and for a total of less than one hour of an eight-hour workday; sit for a total of two hours of an eight-hour workday; was limited in his ability to push and/or pull; and had to lie down to manage pain during the day. The claimant could only occasionally balance, reach, handle, finger and feel, and he could never climb, stoop, kneel, crouch, crawl or operate machinery. Dr. Helton based his opinions on the claimant's heart catheterization and pulmonary function test (Tr. 417-18).

The ALJ addressed Dr. Helton's opinions and determined they were not entitled to controlling weight. *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (noting that medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'"), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). He found that Dr. Helton's opinions were "not well supported by medically acceptable clinical and diagnostic techniques[,]" *e. g.*, there were no clinical or diagnostic findings in support of his opinions other than a passing reference by Dr. Helton to a heart catheterization and pulmonary function studies and the evidence that "Dr. Helton was [not] privy to [the] claimant's negative 2004 cardiac test results[,]" and that the opinions were "inconsistent with [the] other substantial medical evidence of record," *e. g.*, Dr. Helton's own treatment notes "[were] not remarkable for severe chest pain" and there was no evidence the claimant's treating cardiologist had restricted the claimant's functional abilities (Tr. 16-17).

The ALJ then proceeded to consider the proper weight to give Dr. Helton's medical opinions and ultimately determined they were not entitled to "substantial weight." (Tr. 17). *See Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527 [and § 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors in such a determination include the following: (i) the length of the treatment relationship and the frequency of examination; (ii)

the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and, (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ noted in particular that: (i) Dr. Helton had a treatment relationship with the claimant spanning several years, but he had not seen the claimant on a frequent basis prior to completing the medical source statement; (ii) Dr. Helton was an osteopathic physician with no specialty in cardiology or pulmonary medicine; (iii) Dr. Helton's treatment of the claimant was limited to prescribing medication and performing blood work; and, (iv) as noted above, Dr. Helton's opinions were inconsistent with the other medical evidence in the record and they lacked support from his own treatment notes (Tr. 16-17). Thus, the ALJ clearly rejected Dr. Helton's opinions and provided reasons for doing so. *See Watkins*, 350 F.3d at 1301 ("[I]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so."), *citing Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) [internal quotations omitted]. The Court therefore cannot say that his determination regarding Dr. Helton's opinions was clearly erroneous.

The claimant also contends that the ALJ erred in his determination that the claimant could perform substantial gainful activity, *i. e.*, work performed on a regular and continuous

basis. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (noting that substantial gainful activity involves "work activity on a regular and continuing basis, that is, 8 hours a day, for 5 days a week, or an equivalent work schedule[.]") [internal quotation marks and citations omitted]. He suggests that the ALJ erred by failing to include limitations in the RFC consistent with Dr. Helton's opinions. However, as discussed above, the ALJ rejected the opinions expressed by Dr. Helton on the medical source statement, so he was under no obligation to include any of them in the RFC or in the hypothetical questions posed to the vocational expert. *See, e. g., Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (finding that a hypothetical question to the vocational expert "must reflect with precision all of [the claimant's] impairments, but [it] need only reflect impairments and limitations that are borne out by the evidentiary record."), *citing Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). *See also Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (noting that a hypothetical question to a VE is sufficient if "it contained all of the limitations found to exist by the ALJ."), *citing Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993).

The claimant's final allegation of error is that the ALJ improperly evaluated his credibility, *i. e.*, the ALJ failed to discuss how the evidence related to the relevant credibility factors. A credibility determination is entitled to deference unless the ALJ misread the medical evidence taken as a whole. *Casias,* 933 F.2d at 801. But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply

'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

The ALJ determined that "[t]he totality of the record persuades [him] that although claimant has voiced rather marked functional limitations, the true extent of his functional limitations is significantly less than that which is alleged[,]" and concluded that the "claimant's allegations of multiple impairments imposing both exertional and non exertional limitations of such severity as to preclude the performance of any substantial gainful work activity" were not credible (Tr. 18). In reaching his conclusion, the ALJ noted the relevant factors in accordance with *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987) and cited evidence in support of his reasons for finding the claimant's subjective complaints were not credible. For example, the ALJ mentioned that: (i) the claimant had received little emergency treatment for his chest pain and the treatment received was long separated in time; (ii) the claimant's April 2004 echocardiogram "was 'within normal limits', and a myocardial perfusion rest/exercise spect test. . . showed 'no evidence of ischemia'[;]" (iii) the claimant's hypertension was "under excellent control with no related severe end organ damage[;]" (iv) the claimant lacked the occurrence of "frequent severe breathing episodes requiring emergent medical attention" due to COPD; (v) the claimant's physicians advised him to exercise and to lose weight and he failed to do so; (vi) the "consultative examination by Dr. Damon L. Brooks, D.O., was largely unremarkable[;]" (vii) the claimant's test results from March 2004 "showed no recurrent arterial stenosis" and "d[id] not suggest ongoing severe chest pain of cardiac origin[;]" (viii) the claimant had several unremarkable chest x-rays; (ix) there was

no medical evidence of "persistent and adverse side effects" from medications resulting in functional limitations; (x) the claimant's pain has not resulted in "loss of weight due to loss of appetite from incessant pain, the use of assistive devices, or adverse neurologic signs[;]" (xi) the claimant's earnings up until he became disabled in February 2001 were more than in the entire year of 2000; and, (xii) the claimant's subjective complaints "bear some relationship to his . . . impairments [and affect] his ability to stand/walk." (Tr. 18-21).

As the foregoing demonstrates, the ALJ linked his credibility determination to the evidence as required by *Kepler*, and he provided specific reasons for the determination in accordance with *Hardman*. Thus, the ALJ's credibility determination is entitled to deference by the Court. *See Casias*, 933 F.2d at 801.

## Conclusion

As set forth above, the Court finds that correct legal standards were applied by the ALJ and the decision of the Commissioner is therefore supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby AFFIRMED.

**DATED** this 30th day of September, 2008.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**